People v Aron (2025 NY Slip Op 50319(U))

[*1]

People v Aron

2025 NY Slip Op 50319(U)

Decided on March 10, 2025

Criminal Court Of The City Of New York, New York County

Brown, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 10, 2025
Criminal Court of the City of New York, New York County

The People of the State of New York,

against
Daniel Aron, Defendant.

Docket No. CR-025992-24NY

Eliel A. Talo, CLAYMAN ROSENBERG KIRSHNER & LINDER LLP 
Assistant District Attorney Kate Long, New York County District Attorney's Office

Marva C. Brown, J.

Daniel Aron, hereinafter "defendant," is charged with Assault in the Third Degree (PL § 120.00[1]), a class A misdemeanor, and various related charges. By Notice of Motion to Dismiss, dated December 20, 2024, the defense challenges the validity of the People's Certificate of Compliance (COC) and seeks dismissal pursuant to CPL § 30.30. By motion dated January 17, 2025, the People oppose, and the defense replied on January 28, 2025. The People filed a sur-reply on February 24, 2025. 
Upon review of the submissions, the Court file and relevant legal authority, this court finds that the People's COC and supplemental COC (SCOC) are INVALID, and thus, the People's accompanying Certificates of Readiness (CORs) are ILLUSORY. As there are more than 90 days chargeable to the People, the defendant's motion to dismiss is hereby GRANTED. PROCEDURAL HISTORY
This case was filed, and the defendant was arraigned on August 30, 2024. The defendant was released, and the case was adjourned to September 6, 2024, for a Crawford hearing. On September 6, the Crawford hearing was rescheduled to September 13, 2024. 
On September 13, the Crawford hearing was held, and the case was adjourned to October 28, 2024, for a supporting deposition. On October 28 the People served and filed a supporting deposition, the complaint was deemed an information, and the case was adjourned to December 5, 2024, for trial. 
On November 22, 2024, 84 days from the defendant's arraignment, the People served and filed a COC and COR. On December 3, 2024, the defense reached out to the People to identify discovery that they believed to be missing. On December 6, 2024, the People served additional discovery and filed a supplemental COC and restatement of readiness. 
On December 9, 2024, the defense requested the instant motion schedule, arguing that the case should be dismissed because the People's COC was invalid along with the accompanying COR. A motion schedule was set, and the case was adjourned to February 24, 2025, for a decision. 
On January 17, 2025, the People served and filed additional discovery along with a [*2]SCOC and a restatement of readiness. In their reply, the defense addressed this newly disclosed material, and the People were given time to reply to this new issue. On February 24, 2025, the People submitted a sur-reply, and the case was adjourned to March 10, 2025, for a decision. 

VALIDITY OF THE PEOPLE'S CERTIFICATE OF COMPLIANCE
Under CPL 245.20[1], "the prosecution shall disclose to the defendant, and permit the defendant to discover, inspect, copy, photograph and test, all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control, including but not limited to" the items listed in CPL 245.20[1][a]-[u]. The prosecution must also "make a diligent, good faith effort to ascertain the existence of material or information discoverable under [CPL 245.20(1)] and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody, or control" (CPL 245.20[2]). "Read together, CPL 245.50 and CPL 30.30 require that due diligence must be conducted prior to filing a COC" (People v Bay, 41 NY3d 200, 212 [2023]).
The defense must "notify or alert" the prosecution "as soon as practicable" of any defects or deficiencies relating to a COC, and any challenges relating to the sufficiency of a COC or supplemental COC shall be addressed by motion (CPL 245.50[4]). Although belated disclosures do not automatically invalidate a COC, in such instances, the People bear the burden of establishing that they exercised "due diligence and made reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure" (Bay, 41 NY3d at 213, citing People v Santos, 68 NY2d 859, 861 [1986]). The Court of Appeals in Bay discussed how courts can evaluate prosecutorial due diligence and reasonableness as it pertains to discovery compliance:
Although the relevant factors for assessing due diligence may vary from case to case, courts should generally consider, among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery (id.).
If the prosecution fails to demonstrate that they exercised due diligence prior to filing their COC, "the COC should be deemed improper, the readiness statement stricken as illusory, and — so long as the time chargeable to the People exceeds the applicable CPL 30.30 period — the case dismissed" (Bay, 41 NY3d at 213). "[A] defendant need not demonstrate prejudice to obtain speedy trial dismissal based on failure to timely comply with discovery obligations" (id., citing People v Hamilton, 46 NY2d 932, 933-34 [1979] and CPL 30.30[1]). 

The court will now examine the items the defense claims should have been disclosed prior to the People's COC to determine if their non-disclosure renders the People's COC invalid.
A. Underlying Materials Related to Prior Domestic Incident Reports (DIRs)
The defense argues that the People's failure to disclose the underlying police materials for the two prior DIRs renders their COC invalid. The defense argues that the instant charges stem from an ongoing dispute between the defendant and the complainant concerning her refusal to leave his apartment. On two prior occasions, the complainant called NYPD, who then responded to the apartment, filled out DIRs, but then did not make an arrest. The People did disclose the prior DIRs for these incidents, but the defense argues that they are entitled to the underlying [*3]attachments, along with any material created for those incidents, including BWC, audit trails and 911 calls. The defense argues that these materials are relevant to the instant case, and were therefore, automatically discoverable. They also argue that these materials are discoverable because they are exculpatory, due to the fact that both times the complainant alleged the defendant committed acts of physical violence, but the police declined to arrest the defendant.
Here, this court finds that the People were diligent in disclosing the records relating to the prior domestic incidents between the complainant and the defendant prior to filing their initial COC. The People properly disclosed the two prior DIRs where this complainant called 911 following a dispute with the defendant, along with the DIR created for the instant charges (see People v Cartagena, 76 Misc 3d 1214[A] [Crim Ct 2022] [People were required to disclose a prior DIR as background material that related to the case prior to filing their COC]. However, the conduct relating to the two prior DIRs is not charged, and the People have made no representations that they intend to use anything from those incidents at trial. Even if the People were to seek to use these prior incidents at trial as Molineux evidence, any underlying materials related to the prior DIRs, such as BWC or 911 calls from those incidents, would fall under supplemental discovery. CPL 245.20(3), which addresses supplemental discovery, requires the People to "disclose to the defendant a list of all misconduct and criminal acts of the defendant not charged. . . which the prosecution intends to use at trial for purposes of (a) impeaching the credibility of the defendant, or (b) as substantive proof of any material issue in the case." However, supplemental discovery need not be disclosed prior to certifying compliance (CPL 245.20[3]).
The defense's argument that the underlying materials generated from the prior DIRs were automatically discoverable under CPL 245.20(1)(k) as evidence that would tend to "negate the defendant's guilt" or "impeach the credibility of a testifying witness" is not persuasive. The defense argues that the complainant's conduct which resulted in the prior DIRs "reflects a pattern of leveraging law enforcement to remain in his apartment." The defense argues that "the fact that the complainant accused the defendant of physically abusing her on two prior occasions, but that the police choose not to arrest the defendant supports that conclusion." However, while this may be one possible interpretation, it is not the only interpretation and is not directly supported by the facts surrounding these prior DIRs.
The underlying DIRs do not indicate that the complainant "accused the defendant of physically abusing her on two prior occasions." According to the facts as stated by the defense, one of the DIRs was generated from an incident that occurred on May 31, 2024. On that day, police responded to a 911 call and found the defendant and the complainant in an argument. The complainant told the police that the defendant was refusing to let her into the apartment, but she would not fill out a DIR. However, the defendant filled out a DIR indicating that the complainant was "violently knocking on his door trying to get into the apartment to take his dog." Saying that someone refused to let you into an apartment is not the same as saying that someone was "physically abusing" you. The second incident, which occurred on August 7, 2024, when the complainant called the police, resulted in a DIR where the complainant indicated that "she wanted her ex-boyfriend removed," "that they were in a verbal dispute," and that "[the defendant] had not assaulted her" (Def. Motion p. 4 [emphasis added]). Once again, these statements are not the same as saying that someone was physically abusive, which would likely result in an arrest. Notably, the complainant told the police that the defendant had not assaulted her. The fact that the police chose not to make an arrest based on these DIRs does not render all [*4]underlying materials automatically discoverable as evidence that would negate the defendant's guilt or impeach the credibility of a testifying witness. Once the complainant walked in and filed the DIR alleging assault and abuse on August 28, 2024, the police made an arrest. 
This court could imagine a situation where the underlying DIR materials would be automatically discoverable — for example, if the complainant had called the police prior and indicated that the defendant had assaulted her, and the police chose not to make an arrest. Clearly, if the People were in possession of such a DIR, they would have a duty to pursue the issue further, examine the underlying DIR documents and determine why an arrest was not made. However, here, this is not the case. The information contained in the two prior DIRs is equally consistent with an escalating domestic situation, where the defendant was arrested once there were sufficient allegations to support an arrest. Therefore, considering the specific circumstances of this case, this court finds that the People exercised due diligence and made reasonable inquiries with respect to these prior incidents and will not invalidate the People's COC and COR on this basis.[FN1]
 
B. Witness Contact Information
The defense argues that the People failed to disclose adequate contact information for necessary witnesses (see CPL 245.20[1][c]), and this court disagrees. Specifically, the defense claims the People should have disclosed the complainant's father's contact information, who the complainant called from the precinct when she walked in to make the complaint that started this case. However, as the People point out, the complainant's father has no first-hand knowledge of the alleged incidents, as he was not present. The fact that the complainant called him from the precinct when she walked in to file a complaint and relayed her account to him does not mean that his contact information is automatically discoverable. As the People correctly state, he has no non-hearsay knowledge of the allegations against the defendant. The defense's argument that the People should have provided contact information for the "other people" referenced in the complaint is also not persuasive. The People point out they did provide the names and contact information of the one person the complainant was able to identify from those "other people". 
Therefore, the court finds that the People here exercised due diligence in disclosing witness contact information prior to their COC, and this court will not invalidate the People's COC and COR on this basis. 
C. IAB Materials for Testifying Officer Mohammed Fadel
The defense claims that the People's COC is invalid for their failure to turn over an IAB log for testifying Officer Fadel prior to certifying compliance. This IAB log is for a pending allegation of misconduct, where Officer Fadel was responsible for a prisoner who attempted an escape. The People concede that they received this log in March of 2024, but "due to an apparent administrative error, it was not initially provided to the assigned assistant for inclusion in the disclosures for the instant case when the assistant initially requested the disclosures in [*5]October of 2024." The People further claim that, once they discovered this error in January of 2025, they disclosed the log.
Pursuant to CPL 245.20[1][k][iv], the People must disclose, "[a]ll evidence and information, including that which is known to police or other law enforcement agencies acting on the government's behalf in the case, that tends to impeach the credibility of a testifying prosecution witness." Further, information under this subdivision shall be disclosed "irrespective of whether the prosecutor credits the information" (id.). This court finds that CPL 245.20[1][k][iv] requires the People automatically disclose the underlying IAB materials for substantiated, unsubstantiated and pending allegations of police misconduct for their testifying officers, a view that is shared by several other courts (see People v Rodriguez, 77 Misc 3d 23, 25 [App Term, 1st Dept 2022] [court invalidated People's COC because they failed to turn over IAB disciplinary records], citing Matter of Jayson C., 200 AD3d 447 [2021]; People v Luna, 83 Misc 3d 62 [App Term, 2nd 9th and 10th Dept 2024]; People v Hernandez, CR-025819-23NY [Crim Ct, NY County April 8, 2024]; People v Sanchez, 83 Misc 3d 671 [Crim Ct, NY County 2024]; People v Jackson, 79 Misc 3d 832 [Crim Ct, NY County 2023]; People v Kelly, 71 Misc 3d 1202[A] [Crim Ct, NY County 2021]; People v Barralaga, 73 Misc 3d 510 [Crim Ct, NY County 2021]). Because the People are deemed to be in constructive possession of all IAB records, full disclosure must include media and documentary files attached to the misconduct investigation records, whether the People actually possess those items or not. 
The People's contention that this IAB log is unrelated to the subject matter in the instant case and not automatically discoverable is unpersuasive. Disciplinary records of police officers involved in a case always relate to the subject matter as potential impeachment and whether a witness is to be believed (e.g. People v Scott, Docket No CR-026941-23NY [Crim Ct, NY County Sept. 16, 2024] [finding IAB materials are relevant to impeachment irrespective or whether they arise directly from the defendant's case, and the People's "sincere belief" that they are not discoverable does not excuse non-disclosure]; People v Mejia-Diaz, Docket No. CR-001852-24NY [Crim Ct, NY County July 17, 2024] [holding IAB records for substantiated and unsubstantiated misconduct by NYPD witnesses bear on witness credibility and thus relate to the subject matter of the case]; People v Kirby, Docket No. CR-031295-24NY [Crim Ct, NY County June 27, 2024] [COC invalid where the People failed to provide unredacted copies of IAB logs for testifying officers]; People v Edwards 78 Misc 3d 433, 441 [Crim Ct, NY County 2023] ["Impeachment evidence is 'related to the prosecution of a charge' for the same reason that impeachment evidence relates to 'the subject matter of the case': it directly relates to whether the factfinder should believe the witness's testimony"], quoting CPL 245.20[2]; People v Clark, 83 Misc 3d 1295[A] [Dist Ct, Nassau County 2024] ["A holding that the disciplinary records of testifying officers are not part of the People's automatic disclosure obligations pursuant to CPL 245.20 is inconsistent with the intent and the practical impact of the statute itself"]). Even if not eventually used at trial, it is not up to the People to determine what would or would not be useful to impeach a police officer (see People v Goggins, 76 Misc 3d 898, 903 [Crim Ct, Bronx County 2022] ["such evidence and information, which may ultimately be employed by the defense to impeach the credibility of the People's testifying witnesses, should not be filtered through the prosecution"]; People v Kelly, 71 Misc 3d 1202(A) [Crim Ct, NY County 2021] ["Ultimately, any use of these materials for impeachment purposes fall soundly in the discretion of the trial court"]). 
Further, appellate courts within this jurisdiction have found discovery violations absent [*6]an analysis of whether the withheld disciplinary records "related to the subject matter of the instant case" (see People v Rodriguez, 77 Misc 3d 23, 25 [App Term, 1st Dept 2022] [Appellate Term invalidated COC where they failed to turn over underlying impeachment materials without addressing whether said records related to the subject matter], citing Matter of Jayson C., 200 AD3d 447 [1st Dept 2021] [court held that a defendant in a criminal proceeding would be entitled to access to the underlying impeachment records without analyzing whether the records related to the subject matter of the instant case]). This further supports this court's conclusion that CPL 245[1][k][iv] requires the People automatically disclose complete underlying IAB materials regardless of whether the People believe they specifically relate to the subject matter of the charged crime. 
The People concede that they were in possession of this IAB log in March of 2024, but failed to disclose it until after their COC in January of 2025. First, in applying the factors in Bay to evaluate the People's diligence and reasonableness as it pertains to discovery compliance for this case, it's important to note that the People here made seemingly no efforts to comply with the required statutory timeframes outlined in Article 245. CPL 245.10(1)(a)(ii) requires the People to perform its initial discovery obligations on a case where the defendant is released within thirty-five calendar days after the defendant's arraignment on a misdemeanor complaint.[FN2]
 Here, the People failed to articulate any facts as to when they first began their discovery process or disclosed any materials to the defense. With respect to Officer Fadel's IAB log, the People only reference that they initially requested IAB disclosures in "October of 2024," with no date specified. While the facts around the People's initial disclosure efforts remain unclear, what is clear is that the People failed to perform their initial discovery obligations until 84 days from the defendant's arraignment, when the speedy trial period had nearly expired. This fact alone suggests a lack of due diligence. 
The People also failed to provide this court with any details as to why this log was not discovered when they made their request in October of 2024. They merely claim that there was "an apparent administrative error" and nothing more. As such, this court cannot find that they exercised due diligence in disclosing this IAB log, which is for one of their testifying witnesses. Additionally, the fact that this non-disclosure was inadvertent does not render their COC and COR valid (Bay, 41 NY3d at 211 [Court of Appeals rejected the People's argument that "their failure to relay the belated discovery items before filing the COC was inadvertent, that the provision of supplemental discovery does not invalidate a prior COC, and that dismissal should be a 'last resort' imposed only when no other measure can cure any prejudice caused by belated disclosure"], see also People v Kitching, Ind. No. 76444-23 [Sup Ct, Kings County 2024] [COC invalidated where the People's failure to provide discoverable material was due to "inadvertent error or omission"]; People v He, Ind. No. 71640-24 [Sup Ct, Kings County 2024] [same]). While inadvertent omissions will not always automatically invalidate a COC and COR, they can in situations such as this one where the People fail to show they acted with due diligence prior to filing their COC. 
Therefore, the People failed to exercise due diligence and make reasonable inquiries with respect to this IAB log prior to filing their COC. Thus, their November 22nd COC was invalid. 
D. IAB Materials for Non-Testifying Officers
The defense argues that the People's COC was also invalid, because they failed to provide disciplinary records for the four additional officers involved with this case, who the People do not expect to testify at trial. The People disclosed BWC for each of these officers, and all were involved in some way in the incident that led to these charges. At least three of these officers also responded to the prior incidents between the complainant and the defendant. The defense argues that regardless of whether these officers are expected to testify, they People were obligated to diligently search for and produce misconduct records for these officers. The People argue that under CPL 245.20(1)(k)(iv), they are only obligated to disclose evidence and information that tends to "impeach the credibility of a testifying prosecution witness." The defense concedes this point but argues that the requirements of CPL 245.20(1)(k) taken as a whole require the disclosure of NYPD misconduct records for all officers with information relevant to the case.
CPL 245.20(1)(k) states that the People must disclose seven categories of potentially exculpatory information to the defense. Specifically, the People must disclose:
(k) All evidence and information, including that which is known to police or other law enforcement agencies acting on the government's behalf in the case, that tends to: (i) negate the defendant's guilt as to a charged offense; (ii) reduce the degree of or mitigate the defendant's culpability as to a charged offense; (iii) support a potential defense to a charged offense; (iv) impeach the credibility of a testifying prosecution witness; (v) undermine evidence of the defendant's identity as a perpetrator of a charged offense; (vi) provide a basis for a motion to suppress evidence; or (vii) mitigate punishment.
Further, information that falls under CPL 245.20(k) "shall be disclosed whether or not such information is recorded in tangible form and irrespective of whether the prosecutor credits the information" (id.) (emphasis added). 
The People's claim that this court is bound conclude that the disciplinary records of non-testifying officers are not automatically discoverable is false. For this proposition, the People cite People v Cooperman, 225 AD3d 1216 (4th Dept 2024), where the Fourth Department held that the disciplinary records of non-testifying officers "were not subject to automatic discovery inasmuch as CPL 245.20(1)(k)(iv) requires disclosure only of materials that tend to 'impeach the credibility of a testifying prosecution witness'" (id. at 1219). However, the Fourth Department left open the issue of whether disciplinary records of non-testifying officers fall under any of the other six categories enumerated in CPL 245.20(1)(k) (id. at 1219 ["To the extent that defendant contends that other portions of CPL 245.20(1)(k) applied to the personnel files at issue here, we conclude that he did not preserve that contention for our review. . . and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice"], citing CPL 470.15[6][a]). 
Trial courts are currently split as to whether the People are required to disclose disciplinary records for non-testifying officers involved in a case, but to date, there is no binding [*7]authority on this issue.[FN3]
 While it is true that CPL 245.20(1)(k)(iv) only applies to a "testifying prosecution witness," the remaining six categories of exculpatory information within CPL 245.20(1)(k) do not contain this qualifier. "'The failure of the Legislature to include a matter within a particular statute is an indication that its exclusion was intended'" (People v Tychanski, 78 NY2d 909, 911 [1991], quoting Pajak v Pajak, 56 NY2d 394, 397). This leads to the conclusion that the People are required to disclose any exculpatory information that falls into the other six categories regardless of whether the information pertains to a testifying prosecution witness. While this may place additional burdens on the People, this concern is not for the courts to consider when to hold otherwise would contradict clear statutory interpretation (see People v Tychanski, 78 NY2d 909, 911-12 [1991] ["a statute 'must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisaged all the problems and complications which might arise'"], quoting Parochial Bus Sys. v Board of Educ., 60 NY2d 539, 548-549 [1983] and Lawrence Constr. Corp. v State of New York, 293 NY 634, 639 [1944]). Further, to allow the People to limit disclosure based on who they choose to testify at trial "would allow the People to withhold the records for officers that it deemed unfavorable or problematic, even where those officers played a major role in the investigation" (Matter of E.S., 79 Misc 3d 681 [Family Ct, NY County 2023]).
Police disciplinary records, by their nature, may contain evidence that could "negate the defendant's guilt as to a charged offense," "reduce the degree of or mitigate the defendant's culpability as to a charged offense," "support a potential defense to a charged offense," "undermine evidence of the defendant's identity as a perpetrator of a charged offense," "provide a basis for a motion to suppress evidence," or "mitigate punishment" - all enumerated categories within CPL 245.20(1)(k) that the Legislature has deemed to be automatically discoverable (see People v Jackson, 79 Misc 3d 832 [Crim Ct, NY County 2023] [COC invalidated where the People failed to disclose the underlying IAB materials associated with a non-testifying officer who played a significant role in the case]; People v Tavares, 81 Misc 3d 1245[A] [Crim Ct, Bronx County 2024]["Whether a police officer witness is testifying is irrelevant as a matter of law to the determination of whether impeachment material for that officer is discoverable"]; People v Vallejo, 82 Misc 3d 582, 584 [Crim Ct, Bronx County 2023] [same]; People v Edwin, 83 Misc 3d 1273[A] [Crim Ct, Kings County 2024] ["The Court recognizes that this list may contemplate disciplinary records or disclosures of wrongdoing by police officers involved in the case who are not testifying witnesses"], citing People v Peralta; 79 Misc 3d 945 [2023] [same]). Therefore, the People are required to make attempts to determine whether non-testifying officers' [*8]disciplinary records fall into one of the other six enumerated categories in CPL 245.20(1)(k).
Given that this court finds CPL 245.20(1)(k) could mandate the disclosure of non-testifying officer's disciplinary records, under Bay, the People are therefore required to establish exercised due diligence and made reasonable inquiries prior to filing their COC. This does not mean, as argued by the People, that "the disciplinary history of any officer having almost any role in a case requires disclosure of that officer's disciplinary history." This court's ruling does not require the People to disclose the entire disciplinary records for each and every officer involved in a case, regardless of whether the records fall within one of the enumerated categories in CPL 245.20(1)(k). However, the People cannot simply sit idly by and do nothing with respect to the disciplinary records of officers involved with a case, claiming that these materials are not automatically discoverable absent an explanation based on the content of the records. Further, given the mandatory presumption in favor of disclosure when interpreting what should be considered relevant to the subject matter of the case (CPL 245.20[7]), the People should err on the side of disclosing these records or else seek a protective order from the court pursuant to CPL 245.20(7) prior to withholding these records.
Here, the People did not indicate any steps taken to obtain the disciplinary records of any non-testifying officers who were involved with this case. It does not even appear to this court that the People tried to request disciplinary records for any officers other than those who they chose to testify. They cite no arguments about why the disciplinary records of the non-testifying officers do not fall into any of the categories enumerated in CPL 245.20(1)(k). From the People's papers, it appears to this court that they believe they have no obligation to search for them, so they have not. The People's argument that the defense has failed to justify why disclosure is required is also misplaced. The defense cannot be expected to argue why an officer's substantiated, unsubstantiated or pending disciplinary allegation is potentially exculpatory when they do not have access to those records due to the People's failure to provide them in the first place (see People v Vallejo, 82 Misc 3d 582, 585 [Crim Ct, Bronx County 2023] ["Nothing about the phrase 'automatic discovery' supports the People's viewpoint that the State Legislature intended for the defense to "earn" receipt of this material by first presenting evidentiary support or argument therefor"], citing Bay, 41 NY3d 200, 211 [2023] ["In resolving questions of statutory interpretation, our primary consideration. . . is to ascertain and give effect to the intention of the Legislature"]; People v Ballard, 82 Misc 3d 403, 415 [Crim Ct, Queens County 2023] ["[a] defendant is in no position to argue the relevance of something they do not know exists or do not have access to review"], citing CPL 245.20[2], CPL 245.20[7] and National Communications Assn v AT&T Corp, 238 F3d 124, 130 [2d Cir 2001] ["the burden is better placed on the party with easier access to relevant information"]). Such a requirement of the defense would be impossible absent at least some disclosure by the People. 
Therefore, having made no record of any attempts to obtain the disciplinary records for non-testifying officers who were directly involved with this case, the People have failed to meet their burden to show that they exercised due diligence and made reasonable inquiries to disclose these materials. As such, the People's COC and SCOC were invalid, along with the accompanying CORs.

 SPEEDY TRIAL
Pursuant to CPL 30.30[1][b], when a defendant is charged with a misdemeanor punishable by a sentence of more than three months, the prosecution must be ready within 90 [*9]days from the commencement of that criminal action. To satisfy the initial burden under CPL 30.30, the defendant need allege "only that the prosecution failed to declare readiness within the statutorily prescribed time period" (People v Luperon, 85 NY2d 71, 77-78 (1995); see also People v Goode, 87 NY2d 1045, 1047 [1996]). Once the defendant has alleged that more than the statutorily prescribed time period has elapsed since the commencement of the action, the prosecution bears the burden of establishing sufficient excludable delay (see People v Berkowitz, 50 NY2d 333, 349 [1980]). Absent a valid COC, the People cannot be deemed ready for trial (CPL 245.50[3]).
This case was filed, and the defendant was arraigned on August 30, 2024. The defendant was released, and the case was adjourned to September 6, 2024, for a Crawford hearing. On September 6, 2024, the Crawford hearing was rescheduled to September 13, 2024. The People concede that this time is chargeable. (14 days charged)
On September 13, 2024, the Crawford hearing was held, and the case was adjourned to October 28, 2024, for conversion. The People concede that this time is chargeable. (45 days charged; 59 days total)
On October 28, 2024, the People served and filed a supporting deposition, the complaint was deemed an information, and the case was adjourned to December 5, 2024, for trial. On November 22, 2024, the People served and filed a COC and COR. However, as stated above, the People's November 22nd COC was invalid along with the accompanying COR and ineffective in stopping the speedy trial clock. Therefore, this entire adjournment is chargeable. (38 days charged; 97 days total)
As more than 90 chargeable days have accrued, defense counsel's motion to dismiss is GRANTED, and this case DISMISSED. The defendant's remaining arguments are moot. This constitutes the Decision and Order of this Court.
Dated: March 10, 2025
HON. MARVA C. BROWN, JCC

Footnotes

Footnote 1: If this case were not dismissed, this court would order the People to disclose the underlying attachments (BWC, photos, 911 calls, etc.) to the extent that they still exist. Although these materials were not automatically discoverable under these specific circumstances, the defense made the proper showing that they are entitled to their disclosure to examine them for potentially exculpatory information. However, disclosure is no longer necessary due to this case's dismissal for other reasons. 

Footnote 2: When the discoverable materials are "exceptionally voluminous or, despite diligent, good faith efforts, are otherwise not in the actual possession of the prosecution" this time period "may be stayed by up to an additional thirty calendar days" without permission from the court (CPL 245.50[1][a]).

Footnote 3: Although not cited by the People and not binding on this court, the Appellate Term references this issue in People v Jawad, 84 Misc 3d 31 [App Term, 2d, 11th, and 13th Jud Dist 2024]. In Jawad, the Appellate Term reversed the lower court's decision to invalidate the People's COC, where the Criminal Court found that the People had an obligation to review the non-testifying officers' disciplinary records. However, like in Cooperman, the court failed to answer this question, and instead found that the People "exercised due diligence and made reasonable efforts sufficient to satisfy CPL article 245" (id. at 35 ["Assuming, arguendo, that the People had an obligation to review the nontestifying officers' disciplinary records for material discoverable under CPL 245.20(1)(k), we conclude, under the circumstances of this case and considering the relevant factors, that the People's failure to do so did not invalidate their August 30, 2022 COC"] [emphasis added]).